IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON GEORGE, | ) | CASE NO. 1:15-cv-01222 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MARGARET BRADSHAW, | ) | |
| Warden,[1] | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Aaron George ("Petitioner" or "George"), acting *pro se*, filed this habeas

corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.  George challenges the

constitutionality of his convictions and sentences in *State v. George*, Case No. CR-13-571620

(Cuyahoga County).  Doc. 1.  In 2013, George was convicted of kidnapping with one and three

year firearm specifications, felonious assault with one and three year firearm specifications,

improperly discharging a firearm at or into a habitation, having a weapon while under disability

with a forfeiture specification, and obstructing official business.  Doc. 1, p. 1; Doc. 5-1, p. 11.

The trial court sentenced George to six years' imprisonment for kidnapping, six years'

imprisonment for improperly discharging into habitation, three years' imprisonment for having

weapons while under disability, and one year imprisonment for obstructing official business

charge, all to be served concurrently, and three years' imprisonment for the firearms

specification, to be served consecutively, for a total of nine years' imprisonment.  Doc. 5-1, p.

---

[1] In Respondent's Return of Writ, filed September 11, 2015, Respondent states that George is incarcerated at the
Richland Correctional Institution, where he is in the custody of Warden Margaret Bradshaw.  Doc. 5, p. 1.

12.  The court merged the firearm specifications for sentencing.  Doc. 5-1, p. 12.  Also, the court merged as allied offenses the felonious assault and improper discharge counts.  Doc. 5-1, p. 12.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  On September 11, 2015, Respondent filed an Answer/Return of Writ.  Doc. 5.  On October 21, 2015, Petitioner filed a Traverse.  Doc. 8.

For the reasons set forth below, the undersigned recommends that the Court **DISMISS in part and DENY in part** George's Petition (Doc. 1) because the Petition presents claims that are not cognizable on federal habeas review and/or are procedurally defaulted or lack merit.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Eighth District Ohio Court of Appeals summarized the facts underlying George's conviction as follows:

> {¶ 3} The facts presented at trial were as follows: on the evening of February 9, 2013, LaJuana Scales and her 4–year–old daughter, A.G., were at the home of Scales' brother, appellant Aaron George, at 1127 East 113th Street in Cleveland Ohio. Scales and George were drinking and, at approximately 10:00 p.m., Scales left the house to go to the store with her cousin. Scales left A.G. at the house with George. When Scales returned 30 to 40 minutes later, she heard a gunshot as she was approaching the house. When she pulled into the home's driveway, she heard another gunshot and saw George standing in the living room window of the house. She testified that she did not remember if George had a gun when she saw him.

> {¶ 4} Scales approached the house and testified that she spoke with George at a side door to the house where the two "started tussling. I don't know why." Scales then left after "we got done tussling" and returned to her car.

> {¶ 5} A 911 call was made regarding the situation at the home. At trial, Scales did not recall placing the 911 call. The record reflects that Scales did not wish to

testify at trial due to her relationship with George whom she indicated she wished to protect. The trial court was forced to issue a bench warrant to procure Scales' attendance at trial and she was called as a court's witness after failing to appear and indicating she had "memory problems" regarding the incident.

{¶ 6} After the 911 call was played at trial, Scales admitted that it sounded like her voice. Scales noted that she sounded intoxicated on the call and maintained that she was not claiming she did not make the call, only that she did not remember doing so at trial. Scales testified that she eventually recovered A.G. from the home after the police intervened.

{¶ 7} Cleveland police officer Azonna Perez responded to a report of shots fired and spoke with Scales a block from George's home. Scales was visibly upset and wanted her child out of George's house. Perez and other officers secured the perimeter around the home. Police attempts to contact George by knocking on the doors and windows of the home as well as using a loudspeaker were fruitless.

{¶ 8} After a standoff that lasted over four hours, a police SWAT team breached the house, arrested George and recovered A.G. unharmed. No other persons were found in the home.

{¶ 9} A shotgun was recovered from a crawl space in the basement of George's home and police found three spent shotgun shell casings in the living room of the home and one live shotgun shell in the front yard.

{¶ 10} Hours after George's arrest on the morning of February 10, 2013, police received a report of gunfire damage to the home across the street from George's home. Police observed bullet holes consistent with a shotgun entering a window in the home's upstairs bedroom, passing over the bed where the homeowner, 82–year–old Henrietta Melton, had been sleeping and proceeding through to the back wall. Melton's son testified that if the shots had been lower or Melton had moved to sit up in bed, she would have been struck. Melton was shaken up by the incident.

*State v. George*, 2014 WL 2168014, at *1-2 (Ohio Ct. App. May 22, 2014).

## II.     Procedural Background

### A.     State conviction

In February 2013, a Cuyahoga County Grand Jury indicted George for kidnapping (Count One) with one-year and three-year firearm specifications; two counts of felonious assault (Counts Two and Three), each with one-year and three-year firearm specifications; improperly

discharging a firearm at or into habitation (Count Four); having weapons under disability (Count Five) with a forfeiture of weapon specification; and obstructing official business (Count Six). Doc. 5-1, pp. 4-7.  George entered a plea of not guilty to all charges.  Doc. 5-1, p. 8.

A jury trial commenced on June 3, 2013.  *See* Doc. 5-1, p. 359.  On June 5, 2013, the trial court dismissed Count Three, and the jury found George guilty of all remaining charges.  Doc. 5-1, p. 11.  On June 11, 2013, the trial court sentenced George to six years' imprisonment for kidnapping, six years' imprisonment for improperly discharging into habitation, three years' imprisonment for having weapons while under disability, and one year imprisonment for obstructing official business charge, all to be served concurrently, and three years' imprisonment for the firearms specification, to be served consecutively, for a total of nine years' imprisonment. The court merged the firearm specifications for sentencing.  Doc. 5-1, p. 12.  Also, the court merged as allied offenses the felonious assault and improper discharge counts.  Doc. 5-1, p. 12.

## B.    Direct appeal

Through new counsel, George appealed to the Eighth District Court of Appeals.  Doc. 5-1, p. 14.  George raised the following assignments of error:

1.   The state produced insufficient evidence to sustain the Defendant's convictions for kidnapping, felonious assault and improper discharge into a habitation.

2.   The Defendant's convictions were against the manifest weight of the evidence.

3.   The trial court erred by admitting the 911 call into evidence as the 911 tape was not properly authenticated.

4.   The Defendant was deprived of his constitutional right to counsel.

5.   The trial court committed plain error in not instructing the jury on the mitigating factors with respect to kidnapping contained in [Ohio Rev. Code] § 2905.01(C).

4

> 6. The Defendant was deprived his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

Doc. 5-1, pp. 24-25.  The State of Ohio filed its appellate brief on January 6, 2014.  Doc. 5-1, pp. 63-95.  On May 22, 2014, the Eighth District Court of Appeals affirmed the judgment of the trial court.  Doc. 5-1, p. 98; *George*, 2014 WL 2168014, at *1.

On June 30, 2014, George, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court.  Doc. 5-1, pp. 116-18.  In his memorandum in support of jurisdiction, he set forth the following propositions of law:

> 1. When the State produces insufficient evidence to sustain a conviction[] for kidnapping, felonious assault and improper discharge into a habitation, Defendant is denied the Fourteenth Amendment's due process protections.

> 2. When evidence is introduced that has not been properly authenticated, a Defendant is denied the Fourteenth Amendments [*sic*] due process protections and a fair and impartial jury trial under the Sixth Amendment to the United States Constitution.

> 3. When a Defendant is forced to represent himself, whether properly advised or not, he is denied his Sixth Amendment right to counsel.

> 4. When a trial court refuses to provide [a] jury instruction on the mitigating factors related to kidnapping contained in [Ohio Rev. Code] § 2905.01(C), the refusal is plain error and constitutes a violation of the due process protections of the Fourteenth Amendment[] to the United States Constitution.

Doc. 5-1, pp. 120-21.  The court declined jurisdiction of the appeal on October 8, 2014.  Doc. 5-1, p. 152.

## C.     Application to re-open direct appeal

On August 20, 2014, George, *pro se*, filed an application to re-open his direct appeal in the Eighth District Court of Appeals.  Doc. 5-1, pp. 153-63.  In his application, he argued that his appellate counsel provided constitutionally ineffective assistance by failing to raise the following claims on direct appeal:

1.  [T]rial court error for failing to give cautionary jury instructions regarding the admission of a 911 tape, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution.

2.  [T]rial court's failure to specify in the sentencing journal entry, the total number of days of jail time credit to which George is entitled as required under [Ohio Rev. Code] § 2949.12.

3.  [T]rial court's error in failing to address court costs during the sentencing hearing and denying Appellant the opportunity to seek a waiver of the payment of costs.

Doc. 5-1, pp. 154, 158, 160.

On September 19, 2014, the State filed a brief in opposition to George's application.

Doc. 5-1, pp. 164-72.  On February 12, 2015, the state appellate court granted George's

application, vacated the trial court's imposition of court costs, and remanded the case to the trial

court for further proceedings on the imposition of court costs and the allowance of jail-time

credit.  Doc. 5-1, p. 179; *State v. George*, 2015 WL 628351, at *2 (Ohio Ct. App. Feb. 12, 2015).

The court denied George's application as to his claim regarding a cautionary jury instruction.

Doc. 5-1, p. 177; *George*, 2015 WL 628351, at *2.

On March 3, 2015, George, *pro se*, filed a timely notice of appeal in the Ohio Supreme

Court.  Doc. 5-1, p. 182.  In his memorandum in support of jurisdiction, he set forth the

following proposition of law:

When appellate counsel fails to raise the trial court's failure to give cautionary jury instructions regarding the admission of evidence, George was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Doc. 5-1, p. 189The court declined jurisdiction of the appeal on April 29, 2015.  Doc. 5-1, p.

203.

6

**D.      Federal habeas corpus**

On June 17, 2015, George, acting *pro se*, filed his federal habeas petition asserting four grounds for relief.  Doc. 1.  On September 11, 2015, Respondent filed her Return of Writ.  Doc. 5.  On October 21, 2015, George filed a response to Respondent's Return of Writ.  Doc. 8.

Each of George's grounds for relief is addressed below in Section III.B.

**III.      Law and Analysis**

**A.      Standard of review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application'

of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.      Grounds for relief**

### 1.  Ground One  is without merit and should be DENIED

For his first ground for relief, George states:

**Ground One**:  The State produced insufficient evidence to sustain the petitioner's convictions for [k]idnapping, [f]elonious [a]ssault, and [i]mproper [d]ischarge into [h]abitation[.]

8

**Supporting Facts**: The [S]tate failed to produce sufficient evidence to sustain the petitioner's convictions in the above regard.

Doc. 1, p. 5.

*Sufficiency of the evidence standard*

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, deference is due the jury's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not "whether the trier of fact made the *correct* guilt or innocence determination but, rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Snyder v. Marion Correctional Inst., Warden*, 608 Fed. Appx. 325, 327 (6th Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*,

9

— U.S. —, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

### Application of sufficiency of evidence standard to George's claim

Here, the state appellate court, the last state court to review George's sufficiency claim, applied the correct standard under *Jackson*, stating:

> {¶ 13}This court has said that, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011–Ohio–100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry then is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

*George*, 2014 WL 2168014, *2 (relying on Ohio Supreme Court case *Thompkins*, which adopted the *Jackson* standard for review of sufficiency claims); *see also* Doc. 5-1, p. 101.

The state court then examined George's convictions for kidnapping, felonious assault, and improper discharge into a habitation to determine if they were supported by sufficient evidence.

### Kidnapping

With regard to George's sufficiency claim challenging his kidnapping conviction, the court reasoned:

{¶ 14} George was convicted of kidnapping in violation of R.C. 2905.01(B)(2) that prohibits one from knowingly restraining another of their liberty under circumstances that create a substantial risk of serious physical harm to the victim. Where, as here, the victim is under 13 years of age, the means by which the restraint is accomplished is immaterial. Restraint of liberty is defined as to limit or restrain a person's freedom of movement. The trial court instructed the jury consistent with these definitions.

{¶ 15} George argues that the state failed to produce any evidence demonstrating that he knowingly restrained A.G. of her liberty. To restrain the liberty of the other person means to limit one's freedom of movement in any fashion for any period of time. *State v. Holsey*, 8th Dist. Cuyahoga No. 96094, 2011–Ohio–2796, ¶ 13. An offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. *State v. Mosley*, 178 Ohio App.3d 631, 2008–Ohio–5483, 899 N.E.2d 1021, ¶ 20 (8th Dist.). Rather, it depends on whether the restraint is such as to place the victim in the offender's power and beyond immediate help, even though temporarily. *Id.* The restraint need not be actual confinement, but may be merely compelling the victim to stay where she is. *Id.*, citing *State v. Wilson*, 10th Dist. Franklin No. 99AP–1259, 2000 WL 1639621 (Nov. 2, 2000); 1974 Legislative Service Committee Comment to R.C. 2905.01.

{¶ 16} George argues A.G.s [*sic*] liberty was not restrained because there was no evidence that A.G. wanted to leave the home. We find this argument to be without merit. Quoting the Legislative Service Commission Comment to R.C. 2905.01, the Ohio Supreme Court in *State v. Powell*, 49 Ohio St.3d 255, 552 N.E.2d 191 (1990), held that in a prosecution for a kidnapping involving a child under the age of 13, it makes no difference whether the child voluntarily accompanies the kidnapper or submits to the restraint. *Id.* at 263, 552 N.E.2d 191. Merely by keeping the child, the kidnapper restrains her, whether or not physical force was used. *Id.* at 263, 552 N.E.2d 191. Although *Powell* dealt with a kidnapping charge pursuant to R.C. 2905.01(A), the legislative service commission comment extends equally to violations of both subsections (A) and (B).

{¶ 17} A.G. was only five years old when George kept her barricaded in his home preventing her mother and the police from gaining access to her. By engaging in a standoff with the police that lasted for several hours, George restrained A.G.'s freedom of movement and unquestionably placed her beyond immediate help. We find that the state presented sufficient evidence that George restrained A.G.'s liberty.

{¶ 18} George also argues that the state failed to offer sufficient evidence that the circumstances were such that a substantial risk of serious physical harm to A.G. existed. We disagree. R.C. 2901.01(A)(8) defines a "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." The definition of "serious physical harm to persons" in R.C. 2901.01(A)(5) includes: "(b) any physical harm that carries a substantial risk of death" and "(d) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement."

{¶ 19} The evidence at trial established that George had been drinking alcohol with Scales and that George fired a shotgun several times from his living room. Scales testified that she recovered A.G. from the living room or dining room of the home. Even if we accepted the argument that this evidence does not establish that A.G. was placed at risk by George's own gun activity, George's subsequent conduct resulted in a standoff with the police lasting several hours and necessitated a forced entry of his home by the SWAT team in order to secure his arrest and the retrieval of A.G. A.G., held between a breaching SWAT team and a suspect believed to be armed, was unquestionably placed in risk of serious physical harm under these circumstances. We find that the state presented sufficient evidence to support George's kidnapping conviction.

*George*, 2014 WL 2168014, at *2-3; *see also* Doc. 5-1, pp. 101-04.

George essentially repeats here the arguments he made in state court.  First, he contends the State produced insufficient evidence at trial that he restrained his niece.  Doc. 1, pp. 25-26. He claims the state appellate court "neglect[ed] to refer to any portions of the trial record" on this issue.  Doc. 1, p. 26.  This argument fails.  As the state court explained, under Ohio law, "[m]erely by keeping the child, the kidnapper restrains her, whether or not physical force was used."  *George*, 2014 WL 2168014, at *3 (internal quotation marks and citations omitted).  Then, applying that law to facts in the trial record – specifically, that George kept his five-year-old niece "barricaded in his home[,] preventing her mother and the police from gaining access to her . . . [and] engaged in a standoff with the police that lasted several hours" – the court found that the State had presented sufficient evidence that George restrained his niece's liberty.  *Id*.

12

On the issue of restraint, George also argues that his sister left his niece with him, and there was no evidence that the child wanted to be with her mother.  Doc. 1, pp. 27-28.  He points to his sister's testimony that "[he] didn't do anything wrong," she never saw him with a gun that night, and she was not afraid for her child, who was fine and "asking for her uncle" when she retrieved her.  Doc. 1, p. 29.  The state court did not ignore Scales' testimony.  *See George*, 2014 WL 2168014, * 1 (discussing, for example, Scales' testimony that "she did not remember if George had a gun when she saw him.").  Furthermore, the state appellate court explained that, in Ohio, "in a prosecution for a kidnapping involving a child under the age of 13, it makes no difference whether the child voluntarily accompanies the kidnapper or submits to the restraint. Merely, by keeping the child, the kidnapper restrains her, whether or not physical force was used." *George*, 2014 WL 2168014, at *3 (internal quotation marks and citations omitted). Thus, whether or not Scales was afraid for her daughter or whether or not George's niece was asking for George when Scales' retrieved her does not demonstrate that the state appellate court's sufficiency determination was unreasonable. Moreover, in making a determination as to sufficiency of evidence, a habeas court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205.  Therefore, this argument also fails.

Second, George claims the State failed to produce sufficient evidence that there was a substantial risk of physical harm to his niece.  Doc. 1, pp. 26-27.  He contends the state appellate court "failed to review the entire trial record" and only reviewed "portions of the record [that] supported its ruling . . . ."  Doc. 1, p. 26.  George is mistaken.  The appellate court considered the record, including Scales' testimony.  *See, e.g., George*, 2014 WL 2168014, * 1.  Further, if, George is complaining about the lack of specific reference to each and every piece of testimony

in the court's written opinion, his claim also fails since it is not unreasonable for a court to focus on those facts from the record that support its conclusion.

George also cites the lack of evidence that his niece "was in harm's way at any time" and argues that she was "removed from the home safely after police entered . . . ."  Doc. 1, p. 30. The state court found, however, that George had been drinking alcohol, fired a shotgun several times from the room in which the child was found, and engaged in a prolonged standoff with police that ended in a SWAT team's forced entry.  *George*, 2014 WL 2168014, at *3.  Based on these facts, the court reasonably concluded there was a substantial risk of serious physical harm to the child.

Accordingly, the state appellate court's decision that the State presented sufficient evidence to support George's kidnapping conviction was not an unreasonable determination.

### *Felonious Assault and Improper Discharge*

The state court then considered George's sufficiency claims regarding his felonious-assault and improper-discharge convictions, stating:

{¶ 20} George next argues that the state failed to present sufficient evidence to support his conviction of felonious assault in violation of R.C. 2903.11(A)(2) which provides in relevant part: (A) No person shall knowingly do either of the following:* * *(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.

{¶ 21} George argues that the state failed to produce sufficient evidence that he knowingly caused or attempted to cause physical harm to Henrietta Melton because no witness saw him pointing the gun at Melton's home and there was no evidence he knew Melton was inside the home. George also argues that the state failed to present sufficient evidence of his identity as the shooter. We are not persuaded by George's arguments.

{¶ 22} The evidence presented at trial was that a shotgun was fired two to three times. Upon hearing the second shotgun blast, LaJuana Scales observed George standing in his living room. Three spent shotgun shell casings were recovered

14

from George's livingroom and a shotgun was recovered from his home. Aside from A.G., George was the only person found in the house by the SWAT team. Finally, Melton's home directly across the street was struck by gunfire consistent with a shotgun with the pellets passing directly over her bed during the night.

{¶ 23} Pursuant to R.C. 2901.22(B), a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. "It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death." *State v. Young*, 8th Dist. Cuyahoga No. 99752, 2014–Ohio–1055, ¶ 11, quoting *State v. Perez*, 8th Dist. Cuyahoga No. 91227, 2009–Ohio–959, ¶ 42; *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). "Courts have consistently held that shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly." *Id*. This court has previously held that "when 'shooting up' takes place in any home or neighborhood, death may be a natural and probable consequence of this act." *State v. Forney*, 8th Dist. Cuyahoga No. 63310, 1993 Ohio App. LEXIS 5182, 1993 WL 437647 (Oct. 28, 1993).

{¶ 24} There can be no doubt from the record that George knew he was firing his weapon in a residential neighborhood late at night when it is reasonably expected that one's neighbors are at home sleeping. The result of firing his shotgun from the front living room of his home and striking the home and nearly striking his sleeping neighbor was entirely to be expected. George's claim of ignorance that his extremely dangerous conduct could have caused physical harm to his neighbor is without merit.

{¶ 25} George reiterates the same argument regarding the knowingly element of his discharging a firearm into an occupied structure conviction. We reject it for the same reasons.

*George*, 2014 WL 2168014, at *3-4.

George argues this decision was unreasonable because his sister testified that she could not remember if George had a gun while standing at the living room window, and that it may have been someone else she saw.  Doc. 1, p. 33.  He also notes that the State produced no

physical evidence linking him to the gun or the shots fired into Melton's home, such as his DNA or fingerprints, or proof the shells in Melton's house came from the gun he allegedly fired.  Doc. 1, p. 33.  However, "circumstantial evidence is entitled to equal weight as direct evidence." *Durr*, 487 F.3d 423 at 449.  The state court identified ample evidence from which a reasonable trier of fact could find he committed felonious assault and improperly discharged a weapon into a habitation.  Furthermore, as indicated above, a habeas court cannot "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205.

### Conclusion

The undersigned finds that the state appellate court reasonably concluded that a rational trier of fact could have found the essential elements of the crimes of kidnapping, felonious assault, and improper discharge into a habitation beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  The state court's decision, therefore, was neither contrary to, nor an unreasonable application of, *Jackson*.  Nor was it an unreasonable determination of the facts in light of the evidence presented.  Thus, the undersigned recommends that the Court **DENY** Ground One.

**2.  Ground Two is not cognizable on federal habeas corpus review and/or is procedurally defaulted and should be DISMISSED**

George's second ground for relief is as follows:

**Ground Two**: The [s]tate trial court erred by admitting the 911 call into evidence as the 911 tape was not properly authenticated which denied petitioner's [Fourteenth] Amendment [right] to due process and right to a fair trial guaranteed under the [Six]th Amendment to the [United States] Constitution[.]

**Supporting Facts**: The state trial court erred when admitting the 911 call into evidence when the 911 call tape recording was not properly authenticated.

Doc. 1, p. 6.

For the reasons set forth below, Ground Two should be dismissed because it is not cognizable on federal habeas review and/or is procedurally defaulted.

### a. Ground Two is not cognizable

George raised this claim in state court on direct appeal. In addressing the claim and rejecting it on the merits, the state appellate court stated:

{¶ 31} George's third assignment of error states:

> The trial court erred by admitting the 911 call into evidence as the 911 tape was not properly authenticated.

{¶ 32} The decision whether to admit or to exclude evidence rests within the sound discretion of the trial court. *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013–Ohio–3134, ¶ 50, citing *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (8th Dist.1989). Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. *Id.*, citing *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989).

{¶ 33} Evid. R. 901 provides in relevant part:

> (A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

{¶ 34} In *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012–Ohio–921, ¶ 27–29, this court stated:

> Evid. R. 901 governs the authentication of demonstrative evidence, including recordings of telephone conversations. The threshold for admission is quite low, and the proponent of the evidence need only submit "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). "[T]he proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be." *State v. Tyler*, 196 Ohio App.3d 443, 2011–Ohio–3937,

964 N.E.2d 12, ¶ 25, citing *State v. Payton*, 4th Dist. No. 01–CA2606, [2002–Ohio–508, 2002 Ohio App. LEXIS 496, 2002 WL 184922 (Jan. 25, 2002)]. A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence. *Id.*, citing *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 * * *.

For a recorded telephone call to be admissible, the recording must be "authentic, accurate, and trustworthy." *Tyler* at ¶ 26, citing *State v. Were*, 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263 * * *. But, because "conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury," the evidence required to establish authenticity need only be sufficient to afford a rational basis for a jury to decide that the evidence is what its proponent claims it to be. *State v. Bell*, 12 Dist. No. CA2008–05–044, 2009–Ohio–2335, ¶ 17, 30.

{¶ 35} In the present instance, LaJuana Scales testified that the voice on the 911 call sounded like her own voice, albeit in an intoxicated state. This was consistent with her testimony that she had been drinking that night. It is unclear what further evidence George would have us require. In each such instance of identification, the most a witness listening to a recording in court can say is "yes, that sounds like my voice." In fact, here, LaJuana Scales did not deny that it was her voice on the 911 call, stating "I mean, it's there, but I don't remember doing that." We find no abuse of discretion in this instance.

*George*, 2014 WL 2168014, at *5-6.

Respondent argues this claim is not cognizable on federal habeas review.  Doc. 5, p. 10. The undersigned agrees.

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v.*

*Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Generally, therefore, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012). Habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings. *Small v. Brigano,* No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005.) Nevertheless, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). They must be "so egregious that [they] result[]in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). However, "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

Thus, to the extent that George alleges state-law violations, his claim is not cognizable. Furthermore, George has not demonstrated that the challenged ruling resulted in a denial of fundamental fairness. Beyond one cursory reference in a heading to his "Fourteenth Amendment [right] to due process and right to a fair trial guaranteed under the Sixth Amendment," George cites only Ohio evidentiary law to support his arguments, which the state court aptly addressed – applying Ohio law. Also, George does not advance any specific argument as to how the state appellate court's decision violated fundamental fairness or any other federal constitutional principle.

Based on the foregoing, the undersigned concludes that Ground Two is not cognizable on federal habeas review.

### b.  Ground Two also is procedurally defaulted

Respondent further contends this claim is procedurally defaulted.  Doc. 5, pp. 18-20.  The undersigned agrees.  To the extent George has raised a federal constitutional claim in Ground Two, his claim should be dismissed due to procedural default.

Procedural default may occur in two ways.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to

the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.[2] *Coleman*, 501 U.S. at 750.

Respondent argues that George's Ground Two is procedurally defaulted because it was not "fairly presented" to state courts. Doc. 5, p. 18. A state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

Here, George presented his evidentiary claim to state courts on direct appeal. *See* Doc. 5-1, p. 49-51; Doc. 5-1, p. 152. In his state court pleadings, however, his only reference to federal

---

[2] "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)

constitutional law was one mention of his "right to a fair trial" in his appellate brief before the state court of appeals (Doc. 5-1, p. 51), and a reference to "the Fourteenth Amendments [*sic*] due process protections and a fair and impartial jury trial under the Sixth Amendment to the United States Constitution" in a heading in his memorandum supporting jurisdiction before the Ohio Supreme Court (Doc. 5-1, p. 127). These references are too general to fairly present the substance of a federal claim to the state courts. "A petitioner need not cite 'chapter and verse' of constitutional law, . . . , but 'general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.'" *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) (quoting *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000)) (holding petitioner did not fairly present his federal claim in state court). *See also Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (finding claim of "denial of due process and a fair trial" in violation of "14th and 6th Amendments" without citation to federal constitutional cases insufficient for fair presentation).

Since George did not fairly present this claim to state courts and because he no longer is able to raise this evidentiary claim in state court, the claim is procedurally defaulted. *See State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's *res judicat*a rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."). Moreover, George does not offer any argument to establish cause or prejudice to excuse his procedural default of this claim. Nor does he contend that he is actually innocent such that the default should be excused.

Based on the foregoing, the undersigned concludes that Ground Two is also procedurally defaulted.

For the reasons set forth above, the undersigned recommends that the Court DISMISS Ground Two as not cognizable on federal habeas review and/or as procedurally defaulted.

### 3.  Ground Three is without merit and should be DENIED

For his third ground for relief, George states:

**Ground Three**: The petitioner was denied his fundamental constitutional right to counsel when the state trial court failed to engage in an adequate colloquy for purposes of making a determination whether petitioner was making a knowingly, intelligently, and voluntary waiver of counsel violating his [Six]th Amendment to the [United States] Constitution[.]

**Supporting Facts**: The petitioner was denied his constitutional right to counsel when the state trial court failed to engage in an adequate colloquy for purposes of making a determination whether petitioner was making a knowingly, intelligently, and voluntary waiver of counsel.

Doc. 1, p. 7.

George raised this claim in state courts on direct appeal.  The state appellate court, the last state court to address the claim, stated:

{¶ 37} George's fourth assignment of error states:

The defendant was deprived of his constitutional right to counsel.

{¶ 38} George was arraigned on these charges in the Cuyahoga County Court of Common Pleas on February 22, 2013. At that time, he was found to be indigent and counsel was assigned to represent him. During the pendency of the case, seven pretrials were conducted where counsel was present and discovery was exchanged. On April 22, 2013, a trial date was set and, in fact, trial commenced as scheduled. On the appointed day, the court engaged George in a conversation with respect to waiver of trial by jury as to certain offenses, a jury was selected and sworn and opening statements were made by counsel.

{¶ 39} After opening statements, George, for the first time, indicated to the court that he was discharging his counsel. The court then excused the jury and allowed

23

George to explain his reasoning for discharging his attorney and heard his request for the appointment of new counsel. The court denied his request and informed George that he would not appoint new counsel as trial had commenced and offered him two options: that he could continue with his current counsel or proceed pro se. The court then engaged in a full colloquy with George with respect to pro se representation. George elected to proceed pro se after that discussion and signed a waiver of counsel form. The court then appointed the discharged attorney to stand by counsel.

{¶ 40} The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense." *See also Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that the Sixth and Fourteenth Amendments of the United States Constitution guarantee that a defendant in a criminal action must be afforded the right to assistance of counsel).

{¶ 41} That right, however, does not guarantee that an indigent defendant have [*sic*] the right to specific counsel of his choice. *State v. Chavez,* 8th Dist. Cuyahoga No. 99436, 2013–Ohio–4700, ¶ 39, citing *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965). "[C]ourts have 'wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.'" *State v. Hanson*, 8th Dist. Cuyahoga No. 99362, 2013–Ohio–3916, ¶ 24, quoting *United States v. Gonzalez–Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Therefore, decisions relating to the substitution of counsel are within the sound discretion of the trial court. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

{¶ 42} The record is clear that in this case George did knowingly, intelligently and voluntarily waive his right to counsel both in open court and in writing.

{¶ 43} George's fourth assignment of error is overruled.

*George*, 2014 WL 2168014, at *6-7.

George argues the state court's decision is an unreasonable application of federal law under § 2254(d)(1) and an unreasonable determination of the facts under § 2254(d)(2).  Doc. 1, pp. 38-42.

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court held that the Sixth and Fourteenth Amendments guarantee to every defendant in a state criminal trial the "right to proceed without counsel when he voluntarily and intelligently elects to do so." *Id*. at 807. The Court found support for this right in "a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id*. at 817-818.

However, "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist*., 528 U.S. 152, 161 (2000). A defendant may forfeit his self-representation right if he does not assert it "in a timely manner." *Id*. at 162. Thus, "if the right is asserted in an untimely manner, it may be deemed forfeited as a threshold matter." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015). This limitation reflects that, "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.*

In addition, the defendant must "'knowingly and intelligently" elect to conduct his own defense. *Faretta*, 422 U.S. at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)). The *Faretta* Court explained,

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id*. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1943)). Because the risks posed by self-representation during trial are so great, a defendant will not be permitted to waive his Sixth Amendment right to counsel unless the court has made "searching or formal inquiry" to ensure that his waiver is knowing, intelligent, and voluntary. *Patterson v. Illinois*,

487 U.S. 285, 292 & n. 4, 298–300 (1988). In seeking habeas relief, the petitioner has the "burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Iowa v. Tovar*, 541 U.S. 77, 92 (2004). In looking at whether there has been an intelligent and knowing waiver of counsel, courts are to look at all the particular facts and circumstances of the case. *Id.* at 88, 92 (citing *Johnson*, 304 U.S. at 464).

George argues his waiver of his right to an attorney was not knowing and voluntary. First, he complains that the trial court did not inform him of the nature of all charges against him, the possible punishments for each offense, and "any possible defenses that might or might not [have been] available to [him]." Doc. 1, p. 41; Doc. 8, p. 9.

The undersigned finds the state appellate court reasonably decided that the trial judge's dialog was sufficient to determine that George's waiver of counsel was knowing and voluntary. More than three months after George's arraignment, and after a jury had been selected and both parties had presented opening statements, George informed the trial court that he wanted to terminate his counsel and obtain new counsel. Doc. 5-1, p. 365. The judge strongly urged George to continue with his current appointed counsel. The judge explained that because the trial had begun, he would not appoint new counsel for George, so George would have to choose between retaining his current counsel and representing himself. Doc. 5-1, pp. 368-69. The judge noted that defense counsel were experienced trial lawyers, who were prepared for trial and zealously representing George's interests. Doc. 5-1, pp. 367-69. The trial judge further addressed specific concerns of George's, and explained that he would ensure he received a fair trial and he could always testify on his own behalf. Doc. 5-1, pp. 370-76. The judge also went over the advantages and disadvantages of proceeding without counsel. Doc. 5-1, p. 375. Nevertheless, George clearly stated that he wanted to represent himself rather than keep his

counsel. Doc. 5-1, p. 377.  The judge offered to appoint his former counsel as standby counsel should George need their assistance.  Doc. 5-1, p. 377.  The trial judge then conducted an extended colloquy with George, carefully explaining the risks, challenges, and limitations involved when a defendant represents himself at trial.  Doc. 5-1, pp. 378-85.

Contrary to George's claim, the trial judge began his inquiry by ensuring that George understood the nature of the charges against him and the possible punishments for those crimes. He stated:

| | |
|---|---|
| The Court: | I'm gonna' go over what I just said that the trial [c]ourt must do in order to allow you at this point to terminate your counsel's representation and proceed by representing yourself. |
| | So let's go over.  You know the nature of the charges against you and you know how serious they are? |
| The Defendant: | Yes. |
| The Court: | You know the potential penalties? |
| The Defendant: | Yes. |
| The Court: | You know some of these charges involve mandatory prison time? |
| The Defendant: | Yes. |
| The Court: | If convicted, the Court has no discretion to give you probation or  decide against a prison term.  In one of them, one of the counts, a three-year firearm specification, if you're convicted of that, you do three years before you do any time on the underlying offenses. |
| | So if you're convicted, if there's an F-1 and a three-year firearm specification, the minimum time that you're doing if you're convicted on that is a six-year sentence. |

> And it could be – some of these counts could be run concurrent or  consecutive.
>
> So that's one year above what the State of Ohio offered you in terms of a plea that was placed on the record earlier.
>
> You understand how serious these charges are?

The Defendant:      Yes, I do.

Doc. 5-1, pp. 378-79.  Thus, George explicitly represented to the court on the record that he understood the nature of the charges against him and the possible punishments for those offenses.  Also, the circumstances surrounding George's waiver of counsel demonstrate that George understood the charges and penalties he faced.  George had shown a willingness and ability to articulate his wishes and concerns to the trial court; he addressed the judge directly in open court about his desire for new counsel and forcefully advanced his position with the judge. Furthermore, George had just been involved in settlement negotiations regarding plea offers, during which his counsel explained the implications to him.  *See* Doc. 5-1, p. 221-22.  George had also just heard the prosecution's opening statement, in which the prosecutor clearly explained to the jury each charge against George and the facts that supported them.  *See* Doc. 5-1, pp. 345-49.  Therefore, it was not unreasonable for the state appellate court to conclude that when George waived his right to counsel, he understood the charges and penalties he faced.[3]

As to George's argument that his waiver was not knowing and voluntary because the trial court did not inform him of potential defenses, the Sixth Circuit made it clear in *Akins v.*

---

[3] George never categorically states in his pleadings in this Court that he did not understand the nature of the charges or the possible punishments. *See Tovar,* 541 U.S. at 92 ("[W]e note that [the defendant] has never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty."). George states that he is "unlike . . . the defendant in *Tovar,* [who] never claimed he did not fully understand the charge or range of potential punishments." Doc. 8, p. 8. However, George never positively states that he did not know the charges or punishments or provide any argumentation on that point.  His argument focuses exclusively on what the trial court said or did not say, not on his understanding of the charges and penalties.

*Easterling, supra*, that "it is not clearly established that the trial judge is required to do so." *Akins*, 648 F.3d at 398.  The circuit court explained in *Akins* that, although the Supreme Court has observed that a defendant must have "an apprehension" of possible defenses when waiving counsel, the Court does "not require that the judge must be the one to discuss this information with the defendant." *Akins*, 648 F.3d at 398 (quoting *Van Moltke v. Gillies*, 332 U.S. 708, 724 (1948)).  The Sixth Circuit further noted in *Akins* that the *Bench Book for United States District Judges*, which George cites as supporting authority, "does not suggest that the trial judge must discuss the potential defenses . . . with the defendant." *Id.*  In this case, George had appointed counsel on a case that had been pending for several months, and he had just heard his counsel's opening statement, in which he presented George's defenses. *See* Doc. 5-1, pp. 349-50.  He also told the trial judge how he wanted to use his sister's testimony in his defense. *See* Doc. 5-1, pp. 371-74.  Upon consideration of the foregoing, the state court reasonably determined that George understood the potential defenses to his charges.

Finally, George contends his waiver of counsel was not knowing and voluntary because he "wanted counsel but did not want" his current counsel, whom he claims was "not prepared for trial," and "[t]he record demonstrates that [he] chose to represent himself only after he was denied a continuance to hire new counsel." Doc. 1, pp. 39-40.

The Sixth Circuit rejected a similar argument in *Akins.*  In that case, the defendant, who had requested only to represent himself, claimed he really did not want to represent himself but was forced to because he was unhappy with his appointed counsel, and he therefore should not have been permitted to waive counsel. *Akins*, 648 F.3d at 396-97.  The court concluded that the argument was "not a basis upon which a writ of habeas corpus can issue." *Id.* at 397.  It observed that the defendant was essentially arguing that, "although he filed a motion seeking the

former [self-representation], the trial judge should have figured out that he wanted the latter [new counsel]." *Id*. The court concluded that, because the state court found the defendant's request to represent himself "clear and unequivocal," it could not find the state court's determination was objectively unreasonable. *Id*. Moreover, the court stated, even if it construed the defendant's complaints as seeking new counsel, "'indigent defendants do not have the right to counsel of their choice,'" and Supreme Court case law has not "'clearly established'" that "'a trial court must inquire about the reasons for dissatisfaction when a defendant requests appointment of new counsel.'" *Id*. (quoting *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008)).

Also, the Sixth Circuit recently,  in *Pouncy v. Palmer*, 846 F.3d 144 (6th Cir. 2017), rejected a habeas petitioner's claim that he was forced to waive counsel because counsel was unprepared for trial where, despite some evidence of his attorney's lack of trial preparation, it was insufficient to prove that he was "actually incompetent." *Id*. at 161. The court noted that proving an attorney's unpreparedness is "no easy task" and distinguished cases where such claims were successful because it was not "even arguable that counsel could provide effective representation at trial." *Id*. at 161-62 (distinguishing *James*, 470 F.3d at 639, and *Pazden v. Maurer*, 424 F.3d 303, 315 (3d Cir. 2005)). The court emphasized that "an attorney whose preparation is constitutionally acceptable need not be perfect . . . ." *Id*. at 163.

Here, George initially requested new counsel *after* the jury had been empaneled and the trial had commenced. Due to the untimeliness of his request, however, the court informed George he had to choose between keeping his current counsel and representing himself.

George's claim that his constitutional rights were violated because he did not get counsel of his choice fails. As indicated above, "indigent defendants do not have the right to counsel of their choice." *Akins,* 648 F.3d at 397.  Also, trial courts have broad discretion on matters of

continuances.  *See Morris v. Slappy*, 461 U.S. 1, 11 (1983).  Thus, considering that George's request came _*after*_ trial had commenced, George has not demonstrated that the state court of appeals' determination that the trial court did not deprive George of his constitutional right to counsel was contrary to or an unreasonable application of clearly established federal law.

It appears that George is presenting for the first time in these federal habeas proceedings his claim that he was forced to waive counsel because his counsel was unprepared for trial.[4]  This claim also fails.  At trial, when the trial judge asked George to explain why he wanted new counsel, George never said he believed his counsel was unprepared.  He stated only that he did not think his counsel had his "best interests at hand . . . ."  Doc. 5-1, p. 367.  George's attorney assured the judge that he was well prepared for trial and indicated that, although there might be "some disagreement" between him and George on trial strategy, he was obligated to protect his client's best interests and to perform lawfully and ethically.  Doc. 5-1, pp. 367-68.  The judge stressed to George that it appeared to him that his counsel was prepared for trial, which George did not contradict.  Doc. 5-1, pp. 367, 369, 371.  Thus, the record clearly belies George's allegation that his counsel was unprepared for trial or incompetent in any respect, and George offers no evidence to support this claim.

Rather, the record demonstrates that, despite the trial judge's advice and warnings, George clearly and unequivocally chose to represent himself rather than proceed with competent appointed counsel.

Based on the foregoing, the state appellate court's decision affirming the trial court's conclusion that George's waiver of counsel was knowing, intelligent and voluntary was neither contrary to, nor an unreasonable application of, *Faretta*.  The decision also was not based upon

---

[4] Thus, his argument may be subject to dismissal based on a failure to exhaust and/or procedural default.  However, as discussed herein, even if this particular claim was fairly presented to the state courts, it is without merit.  *See* 28 U.S.C. § 2254(b)(2) (courts may deny unexhausted habeas petitions on the merits).

an unreasonable determination of the facts in light of the evidence presented. Accordingly, the

undersigned recommends that the Court **DENY** Ground Three.

### 4. Ground Four is not cognizable on federal habeas corpus review and/or is procedurally defaulted and should be DISMISSED

George states for his fourth ground for relief:

> **Ground Four**: The [s]tate trial court committed plain error in not instructing the jury on the mitigating factors with respect to [k]idnapping under [Ohio Rev. Code] § 2905.01(C) which is a lesser-included offense which denied petitioner's constitutional right to due process guaranteed under the [Fourteenth] Amendment to the [United States] Constitution.

> **Supporting Facts**: The state trial court committed plain error when the court failed to instruct the jury on mitigating factors under [Ohio Rev. Code] § 2905.01(C), with respect to the charge of kidnapping.

Doc. 1, p. 8.

George raised this claim in state court on direct appeal. The state appellate court, the last

state court to review the claim, reasoned:

> {¶ 44} George's fifth assignment of error states:

>> The trial court committed plain error in not instructing the jury on the mitigating factors with respect to kidnapping contained in R.C. 2905.01(C).

> {¶ 45} A first degree felony kidnapping under R.C. 2905.01(B) is reduced to a second degree felony if the defendant "releases the victim in a safe place unharmed." R.C. 2905.01(C). George argues that the trial court erred in failing to provide a R.C. 2905.01(C) instruction to the jury. Because George did not request such an instruction or object to the jury instructions, we review this claim for plain error. State v. Leonard, 8th Dist. Cuyahoga No. 98626, 2013–Ohio–1446, ¶ 32; Crim.R. 30(A). Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. State v. Harrison, 122 Ohio St.3d 512, 2009–Ohio–3547, 912 N.E.2d 1106, ¶ 61; State v. Long, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be

taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.*

{¶ 46} In *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012–Ohio–169, ¶ 55, this court stated:

> Whether a kidnapper releases his victim unharmed in a safe place "is not an element of the offense; rather, the accused must plead and prove it in the fashion of an affirmative defense." *State v. Sanders*, 92 Ohio St.3d 245, 265, 2001–Ohio–189, 750 N.E.2d 90; *State v. Cornute*, 64 Ohio App.2d 199, 412 N.E.2d 416 (10th Dist.1979) ("The provision in R.C. 2905.01(C), reducing kidnapping to a felony of the second degree '[i]f the offender releases the victim in a safe place unharmed' is a mitigating circumstance, rather than an element of the crime of kidnapping. It is in the nature of an affirmative defense and is to be treated as such").

{¶ 47} "The court has no duty to give jury instructions that are neither supported by the facts nor that assist the jury." *State v. Ogletree*, 8th Dist. Cuyahoga No. 79882, 2002–Ohio–4070, ¶ 14, citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981), syllabus.

{¶ 48} Upon review of the record, we find that George has failed to demonstrate that the trial court's failure to, sua sponte, give the jury a R.C. 2905.01(C) instruction affected his substantial rights. As discussed in George's first assignment of error, George's conduct placed A.G. between a breaching SWAT team and a suspect believed to be armed. Rather than releasing A.G. in a safe place unharmed, George's conduct placed her in significant danger and required SWAT intervention to liberate her.

{¶ 49} On these facts, the trial court's failure to issue a limiting instruction did not rise to the level of plain error.

*George*, 2014 WL 2168014, at *7-8.

For the reasons set forth below, Ground Four also should be dismissed because it is not cognizable on federal habeas review and/or is procedurally defaulted.

### a. Ground Four is not cognizable

Respondent argues this claim is not cognizable on federal habeas review. Doc. 5, pp. 12-13. The undersigned agrees.

Errors in jury instructions generally do not rise to the level of federal constitutional violations. Indeed, "the circumstances that would induce a federal court to overturn the state court determination" regarding a requested jury instruction "would need to be extraordinary." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990). Federal habeas courts must determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

George has not shown any such extraordinary circumstances here. As the state appellate court observed, George neither requested the jury instruction at issue, nor objected to the jury instructions. Moreover, the evidence adduced at trial did not support Ohio's statutory mitigating factor for kidnapping, so there was no need for the trial court to issue such an instruction sua sponte.

Based on the foregoing, the undersigned concludes that Ground Four is not cognizable on federal habeas review.

### b. Ground Four is procedurally defaulted

Respondent also argues that George's fourth ground for relief is procedurally defaulted because George did not object to the jury instructions at trial. Doc. 5, pp. 20-23. Again, the undersigned agrees.

The state appellate court explained, "Because George did not request such an instruction or object to the jury instructions, we review this claim for plain error." *George*, 2014 WL 2168014, at *7. Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998); *State v. Glaros*, 170 Ohio St. 471 (Ohio 1960), paragraph one of the syllabus. In "exceptional circumstances," however, Ohio courts may examine a claim that is otherwise waived due to the violation of a procedural rule – such as the contemporaneous objection rule – for "plain error," when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St. 2d 91, 96, 97 (Ohio 1978); *see also* Ohio R. Crim. P. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Failure to adhere to the "firmly-established" contemporaneous objection rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted. *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006). And "the Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue . . . ." *Id.*

Nevertheless, George argues that the Court should not apply this procedural bar to its review of this claim. He first asserts the state appellate court "never relied on the procedural default as an independent basis for its disposition of this case." Doc. 8, pp. 14-15. This argument is misplaced. The state court expressly found that George failed to object to the jury instruction and invoked a procedural bar to its full review of the claim on that basis. It proceeded to review the claim only for plain error, but the court's plain-error review does not

overcome the claim's procedural default for purposes of federal habeas review. *See, e.g., Keith*, 455 F.3d at 673.

George further contends the contemporaneous objection rule "was not firmly established and regularly followed in Ohio" at the time of the court's decision. Doc. 8, pp. 15-16. He cites as support an Ohio appellate decision, *State v. Carroll*, 2010 WL 5071764, at *3-4 (Ohio Ct. App. Dec. 9, 2010), in which the court found plain error in the trial court's failure to issue a jury instruction on the kidnapping mitigating factor because "the evidence presented unequivocally showed that [he] left the victims in safe places unharmed . . . ." Doc. 8, at p. 15-16. *Carroll* does not help George. Not only is it easily distinguished on the facts, as the evidence here did not show that George left his victim in a safe place at all, much less "unequivocally," but the court in *Carroll* did follow the contemporaneous objection rule. As the state appellate court did in this case, it limited its review of the claim to plain error review. The fact that the court in *Carroll* found the trial court committed plain error does not mean the court did not follow the contemporaneous objection rule. George's arguments against applying the procedural bar to his jury instruction claim, therefore, are misplaced and his claim is procedurally defaulted.

Moreover, George makes no showing of cause and prejudice to excuse the default. He contends the default should be excused based on the "actual innocence" standard for overcoming procedural default. Doc. 8, p. 16. This "narrow exception" applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). To demonstrate "actual innocence," a petitioner must show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). The claim

requires a showing of "new reliable evidence" and factual innocence, not mere legal

insufficiency.  *See Schulp v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S.

614, 623 (1998).  George maintains that he is actually innocent of the first-degree kidnapping

charge.  Doc. 8, p. 16.  However, he presents no new reliable evidence to support his claim of

actual innocence.

Based on the foregoing, the undersigned concluded that Ground Four is also procedurally

defaulted.

Accordingly, the undersigned recommends that the Court **DISMISS** Ground Four as non-

cognizable on habeas corpus review and/or as procedurally defaulted.

### IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS in**

**part and DENY in part** George's Petition (Doc. 1).  Grounds One and Three should be

**DENIED** on the merits.  Grounds Two and Four should be **DISMISSED** because they are not

cognizable on federal habeas review and/or are procedurally defaulted.


Dated: February 28, 2017

Kathleen B. Burke
United States Magistrate Judge


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).